Leroy LADSON, Plaintiff,

v.

ULLTRA EAST PARKING CORPORATION, Lerner Management Corporation, and L.P.S. Management Corporation, Defendants.

Leroy LADSON, Plaintiff,

v.

ULLTRA EAST PARKING CORPORATION, L.P.S. Management Corporation, and Alan Tretin, Defendants.

Leroy LADSON, Plaintiff,

v.

ULLTRA EAST PARKING CORPORATION, Defendant.

Nos. 92 Civ. 0147 (LMM), 92 Civ. 0440 (LMM) and 92 Civ. 4894 (LMM).

United States District Court, S.D. New York.

May 10, 1994.

Leroy Ladson, pro se.

Marsha Birnbaum, Birnbaum & Bloch, New York City, for defendants, Ulltra East Parking Corp., L.P.S. Management Corp., and Alan Tretin.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

By this Order, the Court decides motions by defendants Ulltra East Parking Corporation ("Ulltra East" or the "Company"), L.P.S. Management Corporation ("L.P.S."), and Alan Tretin ("Tretin") (collectively "Defendants") for summary judgment in the above-captioned actions pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. On January 9, 1992, plaintiff Leroy Ladson ("Ladson") commenced the 92–0147 action which alleges that Ulltra East and Lerner Management Corporation discriminated against him in violation of §§ 704(a) and 706 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–3(a) and 2000e–5, and § 7(b) of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 626(b). On January 17, 1992, Ladson commenced the 92–0440 action, which alleges violations by, *inter alia,* the Defendants of the Civil Rights Act of 1870, 42 U.S.C. § 1981(a), and the Civil Rights Acts of 1861 and 1871, 42 U.S.C. §§ 1983, 1985, and 1986. Ladson commenced the 92–4894 action on July 1, 1992, and alleges therein that Ulltra East violated § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. These actions all arise out of alleged job discrimination by Ulltra East, Ladson's employer.

On March 29, 1993, the Court decided cross motions for summary judgment filed by Plaintiff and defendants no longer parties to this matter. Familiarity with the facts as set out in the Court's prior decision is presumed. The remaining Defendants filed the instant motions on January 14, 1994. For the reasons set forth below, Defendants' motions are granted in part and denied in part.

### I.

■ Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case ..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party's "evidence ... is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Eastman Kodak Co. v. Image Technical Services, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). A summary judgment motion must be denied if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ In addition, as the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewsinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983).

### II.A.

Plaintiff's Complaint in action 92–0440 alleges causes of action under the provisions of the Reconstruction Era civil rights statutes, 42 U.S.C. §§ 1981, 1983, 1985 and 1986. Defendants' motions for summary judgment with respect to each of these provisions are considered below.

#### 1.

Section 1981 of the Civil Rights Act of 1870 provided, at the time relevant to the events underlying the instant litigation:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all the laws and proceedings for the security of persons and property as is enjoyed by white citizens ...

42 U.S.C. § 1981(a). "By its plain terms, the relevant provision in § 1981 protects two rights: 'the same right ... to make ... contracts' and 'the same right ... to ...

enforce contracts.'" *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989) (ellipses in *Patterson*).

In their motions for summary judgment, Defendants argue that because any alleged discrimination against Ladson took place during the course of Ladson's employment contract, and not with respect to its formation, the protections of § 1981 are unavailable to Plaintiff. Defendant Triter additionally argues that because he is not and was not Ladson's employer, relief under § 1981 is foreclosed as to him.

Defendants have accurately stated the law only insofar as they assert that § 1981 provides no grounds for contesting discriminatory actions occurring subsequent to the formation of a contract; indeed, discriminatory treatment in the course of or in the termination of employment is instead to be adjudicated under the statutory scheme created by the Civil Rights Act of 1964. As the Supreme Court has made clear:

> The *first* of [§ 1981's] protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. ... [T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Patterson v. McLean Credit Union,* 491 U.S. at 176–77, 109 S.Ct. at 2372–73 (emphasis added).

However, as noted *supra,* in addition to proscribing interference with the formation of contracts, § 1981 also makes actionable racially based efforts to prevent the *enforcement* of contracts.[1] Moreover, in addition to prohibiting interference with the enforcement of contracts through the judicial process, the *Patterson* Court also considered as falling within the statute's purview interference with enforcement efforts that an employee might resort to *short* of court action. The Court stated that § 1981

> also covers *wholly private* efforts to impede access to courts or obstruct *nonjudicial* methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions in enforcing the terms of the contract.

*Id.* at 177, 109 S.Ct. at 2373 (emphasis added). Thus, private actions taken to impede the enforcement of labor contracts through such fora as arbitrations make out a claim under § 1981.

On approximately October 15, 1990, defendant Tretin, a customer of the garage where Ladson worked, delivered a letter he wrote to Ulltra East complaining of Ladson's job performance. Tretin Aff., Ex. C. There is no question that the letter was utilized by Ulltra East in the arbitration in which Ladson sought to enforce his rights under the labor contract. *See* In the Matter of Arbitration Between Ulltra East Parking Corporation and Garage Employees Union Local 272 I.B.T., Case # AA–91–148 (Arbitrator Sabatella) at 11.[2] There is now before the Court evidence purporting to demonstrate the intentionally false and misleading nature of Tretin's letter.[3] This new evidence, if borne

---

1. [Section 1981] prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race ...
*Id.* at 177, 109 S.Ct. at 2373.

2. Tretin appeared as a witness in the arbitration as well. *Id.*

3. In his affidavit dated March 1, 1994, Robert Schneider, manager of the Clinton Street Garage

in October 1990, the period of Ladson's termination, stated as follows:

> Leroy Ladson [ ] was an employee at the [Clinton Street] garage and in September of 1990 it became known to me that Leroy Ladson was participating in the Equal Employment Opportunity investigation of my employer, Ulltra East Parking Corporation, based on a complaint made by another employee, Allen Barnwell. I found out about Mr. Ladson's participation in the EEOC investigation ap-

out at trial, would indicate cooperation between Tretin and the Company in the obstruction of Ladson's efforts to enforce his employment contract.

Defendants have offered no evidence whatsoever in contravention of the Schneider Affidavit. Therefore, the Court has no grounds to summarily rule in favor of Defendants, and the motions of defendants Tretin and Ulltra East are accordingly denied as to the § 1981 count.[4]

## 2.

■ Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. There is no evidence nor allegation before the Court indicating any basis for a finding that the discrimination alleged on the part of Defendants was conducted under color of state law. Accordingly, Defendants' motion for summary judgment is granted with respect to the § 1983 count.

## 3.

■ Defendants also claim that they are entitled to a judgment in their favor with respect to Plaintiff's claims under §§ 1985 and 1986 of the Civil Rights Act of 1872. Section 1985 provides in relevant part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action.

proximately two days prior to me writing the first false reprimand on Mr. Ladson.

Upon finding out about Ladson's participation, I informed my employer and was told to commence a campaign to discredit Ladson with false complaints so there would be justification for Ladson's termination in the next month, which was October.

Beginning on September 19, 1990 I began to write false reprimands concerning Mr. Ladson's job performance. Under the direction of my employer, I falsely charged Mr. Ladson with such charges as not cleaning, not turning cars around in the garage, and not taking attendance, among other things. All of these charges were false, and only made in an attempt to terminate Mr. Ladson from his place of employment.

I personally know that Mr. Alan Tretin was told to write a false letter of complaint against Mr. Ladson. In consideration for writing this false letter of complaint, my employer paid for the repair of Mr. Tretin's automobile.

Mr. Irving Frank was also approached and asked to write a false letter of complaint against Mr. Ladson. Mr. Frank did so.

＊　＊　＊　＊　＊　＊

I was repeatedly told by my supervisors to "get rid of" Mr. Ladson on numerous occasions. It is because of this that I wrote false reprimands concerning Mr. Ladson. I never presented any of these reprimands to Mr. Ladson at any time prior to his discharge. I was told that Mr. Ladson was "old", "a trouble maker", and a "black idiot", by my supervisors.

I have not received any compensation for making this affidavit and everything I have said is truthful to my knowledge.
*Id.*

4. The Court notes that as to Irving Frank, the new evidence supplied by Plaintiff calls into question the propriety of the Court's earlier action dismissing him from the case. Accordingly, in light of the new evidence before it, the Court will consider a motion to amend in order to reinstate Frank with respect to the § 1981 claim in the 92–0440 action.

42 U.S.C. § 1985(3). Section 1985(3) is a remedial statute, creating of itself no new substantive rights or liabilities. *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990) ("this section provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates' ") (quoting *Great American Federal Savings and Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979)). Thus, a predicate deprivation of legal rights under the "Constitution or other laws," *Spencer,* 903 F.2d at 174, is required to trigger § 1985.

██ The Supreme Court has ruled, however, that the deprivation of a right created by Title VII cannot provide the legal basis for a cause of action under § 1985(3). *Novotny,* 442 U.S. 366, 99 S.Ct. 2345. The Court's reasoning in that case was based on its determination to respect the administrative scheme established under Title VII for the resolution of job discrimination complaints. In *Novotny,* the Court stated:

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all [the] detailed and specific provisions of [Title VII].... Perhaps most importantly, the claimant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Id.* at 375–76, 99 S.Ct. at 2350–51.[5] Thus, given Plaintiff's failure to assert any rights violation apart from employment related discrimination covered or closely related to that covered by Title VII,[6] no action against the Defendants lies pursuant to § 1985. Further, because claims under § 1986 can rest only on a predicate claim made out under § 1985, *Jews for Jesus, Inc. v. Jewish Com-*

*munity Relations Council of New York, Inc.,* 968 F.2d 286, 291, 292 (2d Cir.1992), an action pursuant to § 1986 is also unavailable to Plaintiff. Accordingly, Defendants' motions for summary judgment with respect to Plaintiff's claims under §§ 1985 and 1986 are granted.

**B.**

Ladson's complaint in action 92–4894 alleges that moneys are owed him for back vacation benefits. Compl. ¶ XVII. A supplemental judgment of the arbitrator ruled that Plaintiff was entitled to all accrued back benefits. *See* Letter to B.J. Cooper, Esq. and C.A. D'Angelo, Esq. from G. Sabatella, Sep. 18, 1992. Plaintiff has submitted evidence that this judgment has not been satisfied. *See* Dep. of M. Goodman, Aug. 24, 1993, at 3.

Defendant Ulltra East seeks summary judgment on this claim on the ground of mootness. Ulltra East claims that for a remedy, Plaintiff's Complaint seeks an injunction against the distribution of vacation time and pay to all Ulltra East employees for the summer of 1992. Defendant claims that, other than this injunctive remedy, no relief is prayed for in the Complaint.

Ulltra East's characterization of the Complaint is without basis. Defendant, presumably in error, recite the relief sought in Plaintiff's earlier petition for a temporary restraining order, long since denied. Ladson's Complaint, however, states no claim for such time limited relief directed against other Company employees. In addition, the Complaint requests a specific dollar amount in compensation for vacation benefits owed. Compl. (Relief) ¶ 3. Accordingly, Ulltra

---

**5.** Although the Court's reasoning leaves open the possibility that a § 1985 claim based on a violation of Title VII and which did not compete with the administrative requirements of Title VII, might be permissible—*i.e.,* a claim brought after a claimant had exhausted his administrative remedies—this Court declines to break such ground in view of the Supreme Court's holding generally that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378.

**6.** The Court also declines to find that Plaintiff's § 1981 cause of action provides the basis for a

claim under § 1985. Likewise, with respect to alleged violations of the ADEA, which has its own administrative scheme similar to that of Title VII, this Court finds the Supreme Court's reasoning in *Novotny* applicable to any like argument that a right protected thereunder may provide a predicate cause of action for a § 1985 claim. *See, e.g., Goodman v. Heublin, Inc.,* 645 F.2d 127, 131 (2d Cir.1981) ·(§ 14(b) of the ADEA, 29 U.S.C. § 633(b), "is to be construed to accord with the similar requirements of § 706(c) of Title VII of the Civil Rights Act of 1964").

East's summary judgment motion with respect to action 92 Civ. 4894 is denied.

### C.

■ Defendants Ulltra East and L.P.S. do not offer any argument with respect to the merits of Ladson's Title VII and ADEA claims (as set forth in 92–0147). Rather, they assert, because Plaintiff did not mitigate damages by accepting a job offered to him by Ulltra East, he suffered no actionable damages, and therefore fails to assert an essential element of his claim.

The relevant provision of Title VII provides:

If the court finds that the respondent has intentionally engaged in or is engaging in an unlawful employment practice charged in the complaint, the court *may* enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as *may* be appropriate, which *may* include, but is not limited to, ... hiring of employees, *with or without* back pay, ... or any other equitable relief as the court deems appropriate.... Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against *shall* operate to reduce back pay otherwise allowable.

§ 706(g) of the Civil Rights Act of 1964, 78 Stat. 261, *as amended,* 42 U.S.C. § 2000e–5(g) (as quoted in *Ford Motor Co. v. EEOC,* 458 U.S. 219, 225–26, 102 S.Ct. 3057, 3062–63, 73 L.Ed.2d 721 (1982)) (emphasis in *Ford* ). Although the determination whether to award back pay to a Title VII claimant is within the exercise of the sound discretion of the trial court, that discretion must be exercised in accordance with sound legal principles. *Ford,* 458 U.S. at 226, 102 S.Ct. at 3062.

■ As a general matter, back pay no longer accrues if an employee rejects an unconditional offer of reinstatement. *See id.* at 238–39, 102 S.Ct. at 3069–70, 73 L.Ed.2d 721 ("absent special circumstances, the simple rule that the ongoing accrual of backpay liability is tolled when a Title VII claimant

rejects the job he originally sought comports with Title VII's policy of making discrimination victims whole"); *see also Clarke v. Frank,* 960 F.2d 1146, 1151 (2d Cir.1992). However, the ultimate inquiry on the question of mitigation is "whether the plaintiff acted *reasonably* in attempting to gain *other employment or in rejecting proffered employment."* *Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 830 (2d Cir.1992) (emphasis added).

■ It is for the trier of fact to determine the unconditionality of an offer and the reasonableness of a refusal. *Id.* Plaintiff alleges that his failure to accept the proffered job is explainable, in part, by threats and intimidation directed toward him. Ladson Aff. ¶ 42.[7] It is hard to imagine a circumstance more "special" and indicative of a reasonable refusal than a threat to physical safety. Given Ladson's unanswered allegations of threats against his person, it is inappropriate for the Court to determine that Plaintiff's refusal of employment at the 13th Street garage was "unreasonable" absent further development of the factual record. *See also Ford,* 458 U.S. at 231, 102 S.Ct. at 3065 (claimant need not take demeaning position).

■ In any event, by offering Ladson a job at a different garage, Ulltra East did not offer to reinstate Ladson to the "job previously denied," as the Supreme Court repeatedly required in *Ford. See, e.g., id.* at 238, 102 S.Ct. at 3069 ("when a claimant rejects the offer of the job he originally sought, as supplemented by a right to full court-ordered compensation, his choice can be taken as establishing that he considers the ongoing injury he has suffered at the hands of the defendant to have been ended by the availability of better opportunities elsewhere ..."); *see also Wonder Markets, Inc.,* 236 N.L.R.B. 787, 787 (1978) (offer of reinstatement ineffective when discharged employee offered a different job, though former job still existed), *enf'd,* 598 F.2d 666, 676 (1st Cir.1979), *supplemental decision,* 249 N.L.R.B. 294 (1980).

---

**7.** *See also* Ladson Aff., Ex. Z. (transcript of arbitration testimony to the effect that Ladson had heard that "something may happen to him" if he were to take the proffered replacement position).

Although the *Ford* Court did, in a single instance, indicate that an offer of a job "substantially equivalent" to the one denied may also toll back pay, 458 U.S. at 232, 102 S.Ct. at 3066, the Court believes that as a matter of common sense, the Court's discretion with respect to whether back pay should be tolled correspondingly increases to the extent that the job offered varies from the original employment.

Moreover, even where an employer unconditionally offers a claimant the very job he had been seeking, circumstances in such cases may nonetheless prevent the tolling of back pay. *See Ford*, 458 U.S. at 232, 102 S.Ct. at 3066 ("an employer charged with unlawful discrimination *can often* toll the accrual of back pay liability by unconditionally offering the claimant *the job* he sought") (emphasis added).[8]

 Therefore, the Court declines to summarily conclude that back pay should be tolled in the instant matter in light of the factual issues in the record concerning the reasonableness of Ladson's refusal in light of the threats alleged. In view of the offer of employment at a distinct worksite, at best a "substantially equivalent" job, the Court exercises its discretion to let the action proceed for the purpose of further developing the record as to whether Ladson met his duty to mitigate damages. In this regard, in considering whether Ladson's refusal of the substitute employment offered by Ulltra East was reasonable, the Court will consider evidence of Ladson's other efforts to mitigate, Ladson Aff. ¶ 46, if any, by seeking employment elsewhere. *See Ford*, 458 U.S. at 231 (duty to mitigate requires claimant to use reasonable due diligence in finding other suitable employment).

Because Defendants' summary judgment motion with respect to action 92–0147 is based solely on Plaintiff's alleged inability to make out a damages claim under Title VII, the Court does not at this juncture consider the merits of Plaintiff's underlying claims under Title VII and the ADEA. Therefore, defendants Ulltra East and L.P.S.'s motion for summary judgment is denied as to Plaintiff's Title VII and ADEA claims.

### III.

For the foregoing reasons, Defendants' motions for summary judgment are granted in part and denied in part. Specifically, Defendants' motions are denied with respect to Ladson's § 1981 claim, and granted as to Ladson's claims under §§ 1983, 1985, and 1986 (action 92–0440). With respect to Ladson's claim asserted under § 301 of LMRA, the motion of defendant Ulltra East is denied (action 92–4894). Defendants Ulltra East and L.P.S.'s motion is denied with respect to Ladson's Title VII and ADEA claims (action 92–0147).

SO ORDERED.

---

**8.** In any event, even if Plaintiff's back pay claim were to be tolled, it might well be the date of his rejection of the employment offer, not the date of the offer itself, that would arguably control the back pay calculation. *See Clarke*, 960 F.2d at 1152 (citing *Ford*, 458 U.S. 219, 102 S.Ct. at

3059). *Compare, e.g., Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808–09 (8th Cir.1982) (consideration of circumstances of offer and rejection may limit accrual of back pay to date of offer).