Fior D'Aliza MINETOS, Plaintiff,

v.

CITY UNIVERSITY OF NEW YORK, Hunter College, and Peter Basquin, Ruth Deford (Kotecha), L. Michael Griffel, Russell Oberlin, and James S. Harrison, Defendants.

No. 92 Civ. 8785 (CBM).

United States District Court, S.D. New York.

Feb. 10, 1995.

Barbara Rosenberg, Brooklyn, NY, Ralph Pinskey, Pinskey & Foster, Harrisburg, PA, for plaintiff.

Martha O. Shoemaker, Asst. Atty. Gen., New York City, for defendants.

## OPINION

MOTLEY, District Judge.

### OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e. Plaintiff, Fior D'Aliza Minetos, claims that defendants, Peter Basquin, Ruth DeFord (Kotecha), L. Michael Griffel, Russell Oberlin and James S. Harrison ("Music Professors") and the City University of New York ("CUNY")/Hunter College discriminated against her because she is hispanic, of Dominican Republic origin, she has an accent, and she is over forty years of age. Defendants have moved for summary judgment pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. Because there are genuine issues of fact in dispute, this court declines to grant defendants' motion.

### SUMMARY OF THE FACTS

Plaintiff Minetos began her employment with Hunter College, a senior CUNY college in 1981. She was assigned to the Music Department as a CUNY office assistant. Prior to that, Minetos had been enrolled at Hunter College. Within the Music Department she was the second secretary to Doro-

thy Morris–Dillon who was the head secretary. In 1990, Morris–Dillon informed the department that she intended to retire in July 1991. Plaintiff alleges that it is the custom, practice, or policy at Hunter College that when the position of head secretary becomes vacant, the CUNY office assistant with the most seniority in that department becomes the new head secretary. Since she was the next in seniority to Morris–Dillon, Plaintiff expressed her desire to the Music Professors to be the next head secretary. When plaintiff did so, she claims that defendants conspired to have her transferred out of the department and hire a new secretary. The Music Professors admit they did on numerous occasions discuss transferring plaintiff out of the department. The three who were most integrally involved in the transfer were defendants Basquin, Carozza, and Harrison. They deny any illegal motivation behind their discussions.

At the same time, Hunter College had a budget crisis which necessitated a freeze on hiring, promotions, and discretionary movements. Because of these budget cuts, the Music Department was allotted funds for one secretary instead of the customary two. The Music Professors claim that the reason they discussed having Plaintiff transferred is because of the need to have one person in the Department capable of performing all duties of the head secretary. Defendants allege that Plaintiff would not have been able to fulfill all of these duties. They claim that she was impolite and curt to people who came to the Music Department. Moreover, she was frequently missing from the Department during business hours.

In addition, the Music Department needed to choose a new head of the Department. The only person who was willing to be chair was Professor Harrison. This defendant had four conditions which he said needed to be met before he would become the chair: 1) a deputy chair to share the workload with him; 2) a private office for the chair; 3) a computer for the chair; and 4) a secretary who was courteous and helpful. Defendants claim that Plaintiff could not meet condition four.

On October 8, 1990 defendant Basquin wrote to the Dean of the Division of Humanities and Arts and demanded that when Morris–Dillon retired, he wanted plaintiff transferred out of the Music Department. If this was not done, the memo stated, the Music Department staff might resign and no one would be chair of the Department. Apparently, the Dean did not effect a transfer and as of May 1, 1991 plaintiff remained as a secretary in the Music Department. The Dean did act later that month when plaintiff was told that she had been transferred to the Senate Office.

Plaintiff received good job performance evaluations. On June 3, 1991, her performance was rated satisfactory by defendant Basquin. When plaintiff inquired as to why she was being removed from her job, she was told by defendants DeFord, Griffel, and Professor Merril that her communication skills were not good enough for the job. To replace Morris–Dillon, the Music Department brought in an African–American, Patricia Ancrum. Ancrum had provisional civil service status, unlike plaintiff who had full civil service status. On May 30, 1991 plaintiff alleges that defendant Basquin told her that she no longer had a job in the Department. After this incident, plaintiff needed medical treatment at Lennox Hill Hospital for heart palpitations. Plaintiff returned to the Music Department when she was released. The next week she began to look for her own reassignment. In June of 1991, plaintiff received a letter telling her to report to the Personnel Office for reassignment on June 24, 1991. Plaintiff went but she left because of ill health. Because plaintiff believed she was being discriminated against, she went to speak with Dean Hortas, defendant Basquin's immediate supervisor. Plaintiff told him that people had complained about her accent. She then went to Ray Carozza, Sylvia Miranda, the Director of Affirmative Action for CUNY, and Dr. Barry Carter, the Director of Affirmative Action at Hunter College. However, none of these individuals responded to her complaint of discrimination based on ethnicity and accent.

On August 1, 1991 she filed a complaint with the Union and filed a written grievance against Hunter College. The same day Carozza proposed a formal charge to terminate her. Plaintiff was evaluated by a psychia-

trist who concluded that she was in need of psychiatric attention and requested a three month medical leave of absence for her. Plaintiff received treatment from two physicians and participated in group therapy. Instead of being terminated, plaintiff was placed on medical leave.

On November 12, 1991, plaintiff filed a charge of discrimination with the EEOC. Plaintiff states that she did not go to the State Division of Human Rights because the investigator assigned to her case by the EEOC told her it was unnecessary. Plaintiff, in that one sitting, tried to note in writing all of the relevant facts but was told by the interviewer that she could tell the investigator in greater detail all of her claims later. When plaintiff was assigned an investigator, she gave him a twelve page typed statement on January 29, 1992 which included allegations that her age played a role in the termination of her employment in the Music Department. Plaintiff was mailed her right to sue Letter on September 3, 1992. Plaintiff received her letter on September 6, allowing three days for mailing under F.R.Civ.P. 6(e). Plaintiff filed her complaint on December 7, 1992.

Defendants have moved for summary judgment, pursuant to Rule 56(b) of the F.R.Civ. P., on eight grounds: 1) Title VII claim untimely filed; 2) Title VII claim cannot be brought against any defendant not named in the charge; 3) plaintiff's age discrimination claim should be dismissed; 4) plaintiff cannot show that she was constructively discharged; 5) plaintiff's 42 U.S.C. § 1981 claim should be dismissed; 6) this court lacks subject matter jurisdiction over plaintiff's 42 U.S.C. §§ 1981 and 1983 claims; 7) plaintiff suffered no constitutional deprivation; and 8) there was no tortious interference with contractual relations. The motion is denied as to all but one ground because plaintiff's Title VII claim is timely and there are genuine issues of fact which plaintiff has raised concerning her claims of discrimination based on national origin, age, and constructive discharge.

## STANDARD FOR SUMMARY JUDGMENT AND DISCUSSION

■ "When a motion for summary judgment is made, and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A Title VII plaintiff cannot "defeat a motion for summary judgment by offering purely conclusory allegations of discrimination." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. den.* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *McLee v. Chrysler Corp.,* 38 F.3d 67 (2d Cir.1994) (Second Circuit reaffirmed the availability of summary judgment in discrimination cases); *Johnson v. Frank,* 828 F.Supp. 1143, 1147 (S.D.N.Y.1993) (Motley, J.).

While summary judgment is available in Title VII cases, the Second Circuit has recently clarified when summary judgment cannot be granted. In *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223–24 (2d Cir.1994), the Court of Appeals stated:

> Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among the employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Finally, the trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.

### I. Title VII Claim is not time barred.

■ With respect to defendants' claim that plaintiff's claim is time barred, this court finds that plaintiff's civil action was timely filed. Under Title VII, a plaintiff must file a civil action within 90 days of receipt of a right to sue letter from the EEOC. While the right to sue letter received by plaintiff was dated September 1, 1992, it was not postmarked until September 3, 1992. The letter was mailed by certified mail. Since plaintiff had begun to teach school that week,

she was not at home to receive the letter and a notice was left in her mail box advising her to go to the Post Office to pick up her certified mail. She was unable to go during the Post Office's business hours because of her teaching job until Saturday, September 12, 1992.

This court finds and concludes that plaintiff had until and including December 7, 1992 to file her action. Since the right to sue letter was mailed, according to Fed.R.Civ.P. 6(e), three days must be added onto the prescribed period. The period would have been from September 2, 1992 to December 5, 1992 instead of ending on December 2, 1992. Since December 5, 1992 was a Saturday, pursuant to Fed.R.Civ.P. 6(a), the filing period extended to the next Monday which would have been Monday, December 7, 1992. Plaintiff filed her action on December 7, 1992 which makes this action timely.

II. Title VII claim against unnamed defendants

■■■ Although defendants Peter Basquin and CUNY were not named as respondents in the administrative charge of discrimination, they are proper defendants. The general rule is that a district court has subject matter jurisdiction only over actions against those individuals named as respondents in an EEOC charge. *Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991). However, the courts have been flexible in interpreting the procedural requirements of Title VII. *Egelston v. State Univ. College,* 535 F.2d 752, 754–55 (2d Cir.1976). Instead of rigidly requiring every defendant to be named in the EEOC charge, the Second Circuit has recognized an "identity of interest" exception. *Johnson,* 931 F.2d at 209; *Bridges v. Eastman Kodak Co.,* 822 F.Supp. 1020, 1023 (S.D.N.Y.1993) (Carter J.). With this exception, there are four factors to be considered and they are: 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are similar to the unnamed party's interests so that for the purpose of obtaining voluntary conciliation and compliance it would be un-

necessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Although defendants Basquin and CUNY did not address themselves to the "identity of interest" exception, this court will address these factors to demonstrate that these two defendants are properly named. With respect to the first factor, plaintiff cannot claim ignorance of Basquin's role in the alleged discrimination because he was her direct supervisor. In addition, plaintiff claims that he was one of the defendants most responsible for her removal from the Music Department. With regard to CUNY, it is less certain that plaintiff, at the time she made her EEOC complaint, knew of any role that CUNY played since she worked specifically at Hunter College. As for the second factor, the interests of the named defendant, Hunter College, are essentially similar to those of CUNY and the Music Professor defendants. Hunter College is a senior college of the CUNY system while the Music Professors are agents of Hunter College. *Gilmore v. Local 295,* 798 F.Supp. 1030, 1037 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 396 (2d Cir.1994) (unnamed defendant, a regional field manager, had substantial identity with corporate defendant, who was named as respondent in EEOC charge, because he was an agent of the corporate defendant).

The unnamed defendants have also failed to give any evidence as required by the third factor to show any prejudice to themselves as a result of being absent from the EEOC proceedings. CUNY has not suffered any prejudice by not being named a respondent in the EEOC charge. CUNY knew of plaintiff's complaint and CUNY's General Counsel and Vice Chancellor for Legal Affairs represented Hunter College in the EEOC investigation. Basquin has failed also to present any evidence of prejudice suffered by being unnamed.

The fourth factor, as expressed in *Johnson,* goes to the court's concern over the closeness of the relationship between the unnamed and the named respondents in the EEOC charge. *Johnson,* 931 F.2d at 210. Basquin is the Chair of the Music Department and an agent of Hunter College. Moreover, his name is mentioned repeatedly in Plaintiff's twelve page statement given to the EEOC. Therefore, there is a sufficiently close relationship between Hunter College and Basquin for him to be a proper defendant. Because of the way the CUNY system is structured and the representation of Hunter College by CUNY General Counsel, CUNY and Hunter College have a close relationship such that CUNY is a proper defendant. Therefore, each of the defendants named in the complaint meets the four factors considered in the "identity of interest" test.

### III.   Age Discrimination

■   In addition, defendants claim that plaintiff's age discrimination claim should be dismissed because plaintiff did not file a charge of age discrimination with the EEOC. While the courts in this Circuit have been reluctant to hear claims that were not originally filed with the EEOC, plaintiff did amend her original complaint to the EEOC. On January 29, 1992, plaintiff completed a twelve page typed statement containing the details of her complaint. Within that document, plaintiff included the statement, "I only had knowledge of one person [who did not like me], Professor Griffel, who told me many times that I had an accent and was too old for the job." This Circuit has carved out three exceptions in situations where the claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to bar such a claim in a civil action. The three exceptions are 1) loose pleading; 2) retaliation against employee filing an EEOC charge; and 3) further incidents of discrimination related to ones alleged in the charge. *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1402–03 (2d Cir.1993).

■   The first exception would apply to the plaintiff. Recognizing that EEOC charges are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, the Second Circuit allows claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the "scope" of the EEOC investigation, which can reasonable be expected to grow out of the charge of discrimination. *Butts,* 990 F.2d at 1402. Plaintiff did include statements in her twelve page statement to the EEOC investigator which alerted the EEOC that she did have an age claim. *Drummer v. DCI Contracting Corp.,* 772 F.Supp. 821, 827 (S.D.N.Y.1991) (For the EEOC reasonably to be expected to investigate a charge, it must somehow have been alerted to the claim.) Because the facts do show that the EEOC was alerted to a possible age discrimination claim, plaintiff's age discrimination claim will not be dismissed.

### IV.   Constructive Discharge

■   Defendants further move that plaintiff's 42 U.S.C. §§ 1981 and 1983 claims be dismissed because she cannot show that she was constructively discharged. In order to establish a constructive discharge, the plaintiff must show that the employer, deliberately made his or her working conditions so intolerable that he or she was forced to resign. *Stetson v. Nynex Service Co.,* 995 F.2d 355, 360 (2d Cir.1993); *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188 (2d Cir.1987). Because this is a question of fact, there must be sufficient evidence for a reasonable factfinder to conclude that the plaintiff was constructively discharged. Plaintiff has met this burden because there is sufficient evidence in the record from which a reasonable factfinder could conclude that she was constructively discharged. Some of that evidence is that defendants Basquin and Griffel made racial slurs in her presence, told her she was too old for the job, and denied her the promotion to head secretary in the music department which was contrary to the custom at Hunter College. A reasonable person could conclude that the motivation behind the comments and events is sufficient to constitute a constructive discharge.

## V. Section 1981

■ Defendants raise two grounds for dismissal of plaintiff's 42 U.S.C. § 1981 claim: 1) failure to state a claim; and 2) this court does not have subject matter jurisdiction over this claim. The defendants are correct when they understand *Patterson v. McClean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989) to stand for the proposition that Section 1981 provides no grounds for contesting discriminatory actions taking place after the formation of a contract. Discrimination occurring during the course of or termination of employment are to be addressed under Title VII. *Ladson v. Ulltra East Parking Corp.,* 853 F.Supp. 699 (S.D.N.Y.1994) (McKenna, J.) However, defendants overlook that, in addition, Section 1981 controls and makes actionable racially based efforts to prevent the enforcement of contracts. *Ladson,* 853 F.Supp. at 702. From the record, there is some evidence to support plaintiff's claims that she was not allowed to be the head secretary because she had a hispanic accent. It is clear from the depositions of defendants that they did actively seek to have plaintiff removed from the department.

■ Moreover, discrimination in promotion can give rise to a cause of action under Section 1981 only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer. *Butts,* 990 F.2d at 1404. Plaintiff contends that if she had become the head secretary for the Music Department, her assignment to that position would have presented an opportunity for a new and distinct relation between her and Hunter College. There is evidence in the record to support such a contention by plaintiff. Professor Harrison testified that the head secretary was an administrative assistant while the other position was merely a secretary. Professor Deford testified that since there was to be only one secretary in the department, the role and responsibility of that person would be quite different from the roles and responsibilities that had been shared by two people. Specifically, Deford explained, "Therefore the person in charge of the office would have more supervisory responsibility than in the past, would have to supervise whatever the part-time help was." Therefore, the court cannot summarily rule in favor of defendants for failure to state a claim under Section 1981.

## VI. Eleventh Amendment Immunity

■ On the other hand, defendants are correct to contend that the Eleventh Amendment bars plaintiff's §§ 1983 and 1981 claims against defendant CUNY. For purposes of this analysis, § 1981 claim is treated in the same manner as a § 1983 claim. The complaint is fashioned as against the Music Department defendants and CUNY. It is, therefore, a suit against CUNY as an institution. States do not count as "persons" under 42 U.S.C. § 1983, and thus their Eleventh Amendment immunity bars suits for damages under that statute. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity." *Will,* 491 U.S. at 66, 109 S.Ct. at 2309.

Any hypothetical recovery against defendant CUNY in this lawsuit would be paid from the New York State treasury. N.Y. Education Law § 6205(1) reads that, "[t]he state shall save harmless and indemnify members of the board of trustees [of CUNY] ... against any claim, demand, suit or judgment ..." This section has been the basis for which courts in this Circuit have ruled that CUNY enjoys Eleventh Amendment immunity from both §§ 1981 and 1983 damages. *Scelsa v. City University of New York,* 806 F.Supp. 1126, 1137 (S.D.N.Y.1992) (Motley, J.); *Torres v. City University of New York,* 1991 WL 143359 at *3-4 (S.D.N.Y.1991); *Accord Davis v. Halpern,* 768 F.Supp. 968, 983-84 (E.D.N.Y.1991). Consequently, the 42 U.S.C. § 1981 and § 1983 damages claims against CUNY fail because they are barred by the Eleventh Amendment.

However, a plaintiff invoking §§ 1981 and 1983 can obtain damages and appropriate

prospective injunctive relief, as well as attorneys fees as part of costs, when the suit is against the appropriate official named in his or her official capacity. *Scelsa,* 806 F.Supp. at 1138. Plaintiff is also not barred by the Eleventh Amendment from the possibility of equitable relief against CUNY.

## VII. Constitutional Deprivation

Because there are legitimate issues of fact concerning whether plaintiff was constructively discharged, this court cannot rule that plaintiff has not suffered a constitutional deprivation. In the instant case, the substantive rights that plaintiff seeks to enforce under § 1983 are those of due process and equal protection under the Fifth and Fourteenth Amendments. Plaintiff contends that if the trier of fact finds that defendants were motivated by illegal discriminatory reasons in their attempt to transfer her out of the Music Department, such an attempt would violate the Equal Protection Clause. This Circuit has established that a violation of equal protection is sufficient to maintain a § 1983 claim. *Carrero v. New York Housing Authority,* 890 F.2d 569, 576 (2d Cir.1989); *Moche v. City University of New York,* 781 F.Supp. 160, 168–69 (E.D.N.Y.1992), *aff'd,* 999 F.2d 538 (1993). Accordingly, plaintiff has stated a claim under § 1983.

## VIII. Tortious Interference with Contractual Relations

Since this court retains jurisdiction over the Title VII and § 1983 claims, plaintiff's state law tortious interference claim will be retained under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

■ Since the court has a basis for subject matter jurisdiction, the inquiry can turn to whether plaintiff has stated a claim of tortious interference. To determine if plaintiff has stated a claim for tortious interference, it is necessary to turn to the applicable New York state law standard. To maintain a successful cause of action for tortious interference with contract under New York law, a plaintiff must allege and prove the existence of a valid contract and damages caused by the defendants' knowing and intentional interference with that contract without reasonable justification. *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 189–90, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980); *Schulz v. Washington County,* 157 A.D.2d 948, 550 N.Y.S.2d 446, 449 (3d Dep't 1990). The key inquiry ordinarily, and in this case, is whether the interference was "without reasonable justification" or was improper. *Guard–Life,* 50 N.Y.2d at 189–90, 428 N.Y.S.2d 628, 406 N.E.2d 445.

■ In order to determine if there was improper interference with the contract, the New York Court of Appeals has adopted the approach set forth in the Restatement (Second) of Torts § 767 (1979). *Guard–Life,* 50 N.Y.2d at 189–90, 428 N.Y.S.2d 628, 406 N.E.2d 445. It is really a balancing test that requires the balancing of several factors. These factors include: the nature of the defendant's conduct, the defendant's motive, the interests of the plaintiff with which the defendant interferes, the interests the defendant seeks to advance, the social interests at stake, the proximity of the defendant's conduct to the interference, and the relations between the parties. Restatement (Second) of Torts § 767; *Guard–Life,* 50 N.Y.2d at 190 & n. 2, 428 N.Y.S.2d 628, 406 N.E.2d 445.

## Conclusion

Therefore, in accordance with the above discussion, this court denies defendants' motion for summary judgment on all grounds save one. Defendants' motion for summary judgment is partially granted as to the dismissal of plaintiff's 42 U.S.C. §§ 1981 and 1983 claims against CUNY for monetary damages.

SO ORDERED.