Aurelius WEEKS, Plaintiff,

v.

Gary COURY, Larry Presswood, Richard Spinks, and Petrocon Engineering, Inc., Defendants.

Civil Action No. H–94–1822.

United States District Court,
S.D. Texas,
Houston Division.

March 29, 1996.

Helen L. Brattin, Attorney at Law, Houston, TX, for Aurelius Weeks.

Bill Jones, Cash Jones & Springhetti, Houston, TX, Walter D. Snider, Strong, Pipkin, Nelson & Bissell, Beaumont, TX, for Gary Coury, Larry Presswood, Richard Spinks, Petrocon Engineering Inc.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

The Court has considered Defendants' **Motion to Dismiss** [Doc. # 22] and Memorandum Brief in Support [Doc. # 23], as well as all responses and replies thereto. The Court has also considered Defendants' **Motion for Summary Judgment and Brief in Support Thereof** [Doc. # 21], and all relevant responses, replies and supplemental briefing.

## I. DISMISSAL AND SUMMARY JUDGMENT STANDARDS

Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when, taking the facts alleged in the complaint as true, it appears certain that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.,* 61 F.3d 288, 289 (5th Cir.1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992)).

Summary judgment is appropriate when "the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts in the summary judgment record are to be reviewed with all inferences drawn in favor of the party opposing the motion, *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mutual Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)), and the party moving for summary judgment must demonstrate the

absence of a genuine issue of material fact. *Little*, 37 F.3d at 1075. Summary judgment is not precluded in the employment discrimination context merely because state of mind is at issue. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 956 n. 3 (5th Cir.1993).

## II. *FACTUAL BACKGROUND*

Plaintiff Aurelius Weeks has brought this employment discrimination suit against Defendant Petrocon Engineering, Inc. (hereinafter "PEI"), as well as the following individual defendants: Gary Coury, Vice–President and General Manager of the Houston office of PEI during Plaintiff's employment; Richard Spinks, Supervisor of Electrical and Instrumentation Engineering and Design Group at the Houston office of PEI during Plaintiff's employment; and Larry Presswood, Manager of Engineering in the Houston Office of PEI during Plaintiff's employment.

Plaintiff was employed by PEI as an engineer from September 1990 until March 1993. On March 29, 1993, PEI fired Plaintiff for having falsified his employment application.[1] In his employment application, completed on September 6, 1990, Plaintiff had reported that he had a bachelor of science degree in mechanical engineering ("B.S.M.E.") from the University of Michigan, a bachelor of science degree in physics from the University of Michigan, and that he had attended the University of Michigan for six years.[2] Defendants state that PEI discovered that Plaintiff did not have a B.S.M.E. from the University of Michigan while conducting a "random audit" of its employees.[3] The Personnel Action Request form, signed by Defendants Spinks and Presswood and dated March 31, 1993, specifically recommended Plaintiff's termination because his application had "[i]ndicated a degree in Mechanical Engineering from University of Michigan—did not have a degree." [4]

Plaintiff contends that he was questioned by Defendants about his B.S.M.E. on March 29, 1993, and was given until April 2, 1993 to confirm through official sources that he actually had the degree from the University of Michigan.[5] Plaintiff then contacted University officials and gave them permission to discuss the status of his degree with PEI.[6] Ms. Valeta Pletcher, the agent of the University of Michigan, called Plaintiff and told him that she had contacted PEI and informed PEI that Plaintiff had the degree.[7] On March 31, 1993, Pletcher sent a letter to Coury certifying that the University of Michigan was awarding Plaintiff's degree effective April 29, 1978.[8] It appears PEI was aware of the University's position on or about March 31, 1993. Plaintiff further states that he spoke with Spinks "prior to April 2, 1993" to confirm that PEI had heard from the University of Michigan confirming the degree and that, although Spinks acknowledged that PEI had heard from Michigan, he stated that Plaintiff was still fired.[9] Plaintiff was fired on March 31, 1993, effective March 29, 1993.

Plaintiff contends that he had graduated from the University of Michigan with a B.S.M.E. when he applied to PEI, and that his degree was granted effective April 29,

1. Defendants' Motion for Summary Judgment and Brief in Support Thereof [Doc. # 21] (hereinafter "Summary Judgment Motion"), at 3.

2. Employment Application (Exhibit A to Summary Judgment Motion), at 1. Plaintiff notes that, when he filled out PEI's employment application, he had already been offered and had accepted the position as engineer. Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 27] (hereinafter "Summary Judgment Response"), at 4.

3. Summary Judgment Motion, at 3.

4. Personnel Action Request (Exhibit E to Summary Judgment Response).

5. Summary Judgment Response, at 4–5; Affidavit of Aurelius Weeks (Exhibit A to Plaintiff's Response to Defendants' Motion to Dismiss) [Doc. # 26] (hereinafter "Weeks Affidavit"), at 1.

6. Summary Judgment Response, at 4.

7. *Id.* at 5.

8. Letter to Gary Coury from Valeta N. Pletcher, Engineering Senior Auditor for the University of Michigan, dated March 31, 1993 (Exhibit C to Summary Judgment Motion).

9. Summary Judgment Response, at 6; Weeks Affidavit, at 1.

1978.[10] Although Plaintiff satisfactorily completed all academic requirements for his B.S.M.E. in April 1978, he owed the University of Michigan some money for a student loan, and the University therefore withheld the degree.[11] Plaintiff argues that he had paid the indebtedness to the University of Michigan in full by 1980, at least 10 years before he applied to PEI, and therefore he "indicated" on his PEI application that he had graduated with his B.S.M.E.[12]

As for the dispute over Plaintiff's physics degree and the length of time he attended the University of Michigan, Defendants state that on April 1, 1993, after Plaintiff had been discharged, PEI also discovered that Plaintiff did not have a physics degree from the University of Michigan and had not attended the University of Michigan for six years, as his employment application had stated.[13] Plaintiff does not contest that this information was erroneously reported on his employment application. He concedes that he intentionally misrepresented this information.[14] Plaintiff now states that, in actuality, he received his physics degree from the University of Liberia before he attended the University of Michigan, and that he attended the University of Michigan for only four years.[15]

Plaintiff argues that Defendants had the correct information about his education long before they fired him since, in 1991, Plaintiff had filled out a PEI form used to calculate the amount of bonus payments made to employees. This form reported that he had obtained his physics degree from the University of Liberia rather than the University of Michigan.[16] Defendants, however, maintain that the 1991 document which corrected the false information was given to Spinks, who did not have access to Plaintiff's employment application and had no reason to cross-reference the information.[17]

Plaintiff further states that he was verbally offered a contract for a one year assignment in Saudi Arabia by PEI approximately one month before his termination, that the terms of the offer were put into a written contract, and that Plaintiff accepted the offer.[18] Plaintiff argues that this contract was breached by PEI.

## III. *LEGAL DISCUSSION*

### A. *Title VII*

Plaintiff alleges that Defendants violated Title VII by subjecting him to a racially discriminatory discharge, by denying him a pay raise, and by failing to promote him. Defendants have argued that (1) the claims against the individual defendants should be dismissed, (2) the claims regarding Plaintiff's raise and promotion are time-barred and should be dismissed, (3) summary judgment is appropriate on Plaintiff's claim of discriminatory discharge, and (4) even if Plaintiff could establish discriminatory discharge, damages should be limited on the basis of after-acquired evidence which was legal justification for Plaintiff's discharge. Each of these arguments will be addressed in turn.

10. Summary Judgment Response, at 2; Weeks Affidavit, at 2; University of Michigan diploma, dated April 29, 1978 (Exhibit A–1 to Summary Judgment Response).

11. Summary Judgment Response, at 4; Weeks Affidavit, at 2.

12. Summary Judgment Response, at 4; Weeks Affidavit, at 2.

13. Summary Judgment Motion, at 3; Affidavit of Jimmie Carpenter (Exhibit D to Summary Judgment Motion). Plaintiff's resume, submitted to PEI along with his employment application, was not specific as to either fact, although it at least strongly implied that his physics degree was from the University of Michigan. Resume of Aurelius Weeks (Exhibit B to Summary Judgment Motion), at 3.

14. Plaintiff's Response to Defendants' Memorandum Brief on 42 U.S.C. Section 1981, Interference with Contract, and Falsification Issues [Doc. # 38], at 8.

15. Summary Judgment Response, at 10.

16. Summary Judgment Response, at 2, 11; Weeks Affidavit; "Benefit Dates/Education Levels" Form (Exhibit A–2 to Summary Judgment Response).

17. Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 34] (hereinafter "Summary Judgment Reply"), at 5–6.

18. Summary Judgment Response, at 13; Weeks Affidavit, at 3–4; Employment Contract (Exhibit A–3 to Response to Summary Judgment Motion).

**1. *Individual Defendants: Coury, Presswood, and Spinks***

■ Defendants have moved to dismiss the claims against the individual Defendants on the grounds that the individual Defendants are not "employers" under Title VII. Given that Plaintiff has submitted his own affidavit and other evidence in response to the motion, it is clear that the parties treated this as a motion for summary judgment and the Court will decide the motion under those standards.[19]

■ Defendants argue that none of the individual Defendants are liable to Plaintiff because none of them qualifies as an "employer" under the Title VII definition.[20] Title VII provides that the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The term "employer" does not encompass all supervisory personnel, but only those delegated traditional rights of employers such as hiring and firing. *Garcia v. Elf Atochem North America*, 28 F.3d 446, 451 (5th Cir.1994). Furthermore, the Fifth Circuit has stated that the purpose of the "agent" provision in the definition was to incorporate *respondeat superior* liability into Title VII, but that Title VII does not permit the imposition of liability upon individuals unless they meet Title VII's definition of employer. *Grant v. Lone Star Co.*, 21 F.3d 649, 652–53 (5th Cir.1994), *cert. denied,* ―― U.S. ――, 115 S.Ct. 574, 130 L.Ed.2d 491 (1995); *see also Garcia*, 28 F.3d at 451 & n. 2; *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d

583 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

Plaintiff has argued that the individual Defendants clearly acted as agents of PEI, due to their participation in the decision to terminate Plaintiff and "all of their discriminatory actions against Plaintiff."[21] As for Spinks and Presswood, Plaintiff referred to them in the body of his E.E.O.C. charge.[22] Furthermore, the Personnel Action Request which requests Plaintiff's discharge for having falsified his application form is signed by Spinks as Administrative Supervisor and Presswood as Manager, and Plaintiff therefore argues that these Defendants participated in the decision-making process that forms the basis of the discrimination, so as to make them agents of PEI.[23] As for Coury, Plaintiff has alleged that he knew of Spinks' allegedly discriminatory treatment of Plaintiff and failed to take prompt remedial action in response to Plaintiff's complaints against Spinks, that Coury required Plaintiff to accept a lower per diem than that collected by other project managers, and that he assigned additional and presumably unnecessary staff to Plaintiff's projects.[24]

The individual Defendants in this case do not meet Title VII's definition of "employer." None of the individual Defendants had the authority to fire the Plaintiff on his own.[25] The Personnel Action Request Form merely demonstrates that Spinks and Presswood *requested* Plaintiff's termination, and does not indicate any authority on their part to fire him. All the individual Defendants' conduct that Plaintiff criticizes was clearly within the individual Defendants' scope of their employment duties and was in furtherance of the

**19.** The result would be the same if the Court restricted itself to the pleadings and used standards applicable to motions to dismiss.

**20.** Title VII liability attaches only to a plaintiff's "employer." *See Garcia v. Elf Atochem North America*, 28 F.3d 446, 450 (5th Cir.1994).

**21.** Plaintiff's Response to Defendants' Motion to Dismiss [Doc. # 26] (hereinafter "Response to Motion to Dismiss"), at 2–3.

**22.** Weeks Affidavit, at 1–2; Plaintiff's E.E.O.C. Charge (Exhibit A1 to Response to Motion to Dismiss).

**23.** PEI's Personnel Action Request (Exhibit A2 to Response to Motion to Dismiss); *see Garcia*, 28 F.3d at 451.

**24.** Response to Motion to Dismiss, at 3; Weeks Affidavit, at 2.

**25.** Spinks Affidavit (Exhibit B to Reply to Motion to Dismiss); Presswood Affidavit (Exhibit C to Reply to Motion to Dismiss); Coury Affidavit (Exhibit D to Reply to Motion to Dismiss).

management of PEI. None of the actions in issue were even arguably taken in the individual Defendants' personal—as opposed to official—capacities.

 Title VII is not intended to burden small entities such as individual employees with civil liability and costs associated with litigating discrimination claims. *See Grant,* 21 F.3d at 652–53. Therefore, summary judgment is granted and the Title VII claims against the three individual Defendants are dismissed.[26]

### 2. *Timeliness of Claims Regarding Promotion and Raise*

Defendants have moved to dismiss Plaintiff's Title VII claims regarding his failure to receive a pay raise and promotion, arguing that the complaint is not timely.

Plaintiff argues that Defendants' failure to promote Plaintiff and give him a raise were continuing acts of discrimination against Plaintiff up until the date Plaintiff was terminated, instead of isolated incidents in February 1992. Response to Motion to Dismiss, at 4. Plaintiff also argues that no one ever told Plaintiff that he had been finally denied either the recommended pay raise or the promotion, and therefore that there was nothing to trigger his awareness of and duty to assert his rights.[27]

 Plaintiff's claims for denial of a pay raise and promotion are either moot or untimely. As demonstrated by Plaintiff's own deposition testimony, these alleged violations had been cured by the time of his discharge. Plaintiff testified that, although he was told in February 1992 that he would not receive a raise or promotion and made complaints about it, he did receive a raise in October 1992.[28] Furthermore, Weeks was promoted

to the position of Project Manager before he was discharged.[29] Therefore, any injury that might have been alleged was cured.

 Moreover, to the extent Plaintiff contends his raise or promotion should have been given sooner, these claims are time barred. 42 U.S.C. § 2000e–5(e); *Griffin v. City of Dallas,* 26 F.3d 610, 612–13 (5th Cir.1994). While the Fifth Circuit has recognized an equitable "continuing violation" exception to the Title VII limitations period, which arises where the unlawful employment practice manifests itself over time rather than as a series of discrete acts, *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989), this exception is inapplicable here. The subject matter, frequency, and permanence of the alleged discrimination are all factors to be considered when determining whether a plaintiff can support a claim for a continuing violation, although these factors are not exhaustive. *Id.* at 475 (citing *Berry v. Board of Supervisors of Louisiana State University,* 715 F.2d 971, 981 (5th Cir. 1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986)). The alleged denials of pay raise and promotion were discrete acts separate from Plaintiff's discharge, and therefore the facts presented by Plaintiff fail as a matter of law to establish a continuing violation.

These claims are therefore dismissed.

### 3. *Discriminatory Discharge*

Defendants have moved for summary judgment on the issue of whether or not Plaintiff's discharge violated Title VII. Defendants have taken the position that Plaintiff was discharged from his employment solely because he lied on his employment application about his B.S.M.E. degree and not for any discriminatory reason.[30]

---

26. Given the holding that the individual Defendants are not "employers" under Title VII, the Court need not address Defendants' argument that it lacks subject matter jurisdiction over the individual Defendants because only PEI was named in Plaintiff's E.E.O.C. charge.

27. *Id.* at 4.

28. Plaintiff's Deposition (Exhibit E to Motion to Dismiss Reply), at 95–98.

29. *Id.* at 95–98, 100.

30. Summary Judgment Motion, at 5; Affidavit of Doug Eckols (Exhibit E to Summary Judgment Motion) (hereinafter "Eckols Affidavit"). Defendants reiterated this position at oral argument before this Court on October 19, 1995, stating that Plaintiff was fired for lying on his application, and that it was immaterial what Plaintiff had actually lied about.

Under Title VII, it is unlawful for any employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). The plaintiff bears the burden of establishing a prima facie case by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 992–93 (5th Cir.1996) (en banc); *Marcantel v. State of La., Dep't. of Transp. and Dev.,* 37 F.3d 197, 199 (5th Cir.1994). A prima facie case includes the following elements: (1) membership in a protected class; (2) that the plaintiff was qualified for the position at issue; (3) that the defendants made an adverse employment decision despite the plaintiff's qualifications; and (4) that the plaintiff was replaced with a person not a member of the protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Portis v. First National Bank of New Albany, MS,* 34 F.3d 325, 328 & n. 6 (5th Cir.1994).

If the plaintiff succeeds in establishing a prima facie case, the burden of production then shifts to the defendants to proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Rhodes,* 75 F.3d at 992–93 (citing *Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747); *Marcantel,* 37 F.3d at 199. The defendants may meet this burden by presenting evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Rhodes,* 75 F.3d at 993. If the defendants meet their burden, the presumption raised by the plaintiff's prima facie case disappears, and the plaintiff then has the burden of establishing that the defendants' proffered nondiscriminatory reason was merely a pretext for discrimination.

*Id.* The plaintiff must produce sufficient evidence to establish that the defendants' proffered rationale was not merely a pretext, but was a pretext for discrimination *on the basis of race. Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747; *Bodenheimer,* 5 F.3d at 957. Throughout the case, the plaintiff retains the ultimate burden of persuasion. *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995).

■ Defendants argue that they are entitled to summary judgment on the issue of discriminatory discharge for several reasons. First, Defendants argue that Plaintiff cannot establish a prima facie case of race discrimination because Plaintiff did not have a B.S.M.E. and therefore was not qualified for the position from which he was terminated.[31] Defendants concede that Plaintiff had completed all of the requisite course work for the B.S.M.E., but maintain that he was not qualified for the position with PEI because, due to his financial indebtedness to the University of Michigan, he did not have a "university-sanctioned degree." [32] Defendants also argue that the fact that Plaintiff's B.S.M.E. was granted effective April 1978 is irrelevant and that, since the University of Michigan told PEI in March 1993 that it was going to confer the degree on Plaintiff, Plaintiff clearly had not had the degree when he applied or during his PEI employment.[33]

Plaintiff argues that he thought that he had the B.S.M.E. degree at the time he applied to PEI, and therefore that the information he gave regarding his B.S.M.E. degree was "true and complete to the best of [his] knowledge" at that time, as required by the application.[34] Furthermore, he claims that he actually had the right to state that he had the degree, since he had completed the academic requirements in 1978, and all financial indebtedness was resolved almost ten years before he applied to PEI.[35]

**31.** Summary Judgment Motion, at 7.

**32.** *Id.* at 8.

**33.** Summary Judgment Reply, at 2, 4.

**34.** Plaintiff's Response to Defendants' Memorandum Brief on 42 U.S.C. Section 1981, Interference with Contract, and Falsification Issues [Doc. # 38] (hereinafter "Plaintiff's Response to Defendants' Memorandum Brief"), at 6.

**35.** *Id.* at 6–7. Plaintiff further states that he had applied to the State of Texas for his Texas Professional Engineers' license, which requires an engineering degree, several months prior to his termination by Defendants in March 1993, and that the application was granted. *Id.*

Each side has presented expert opinions on the issue of whether or not Plaintiff was justified in stating on his employment application that he had earned a B.S.M.E. from the University of Michigan. Defendants have proffered the affidavits of W.L. Pate, the president of an executive search firm called Pate Resources Group, and David Shattuck, an associate dean in the Cullen College of Engineering at the University of Houston and a registered professional engineer. Mr. Pate states in his affidavit that it is his expert opinion that Plaintiff's statements on his employment application were not truthful. He states that having a university-sanctioned degree "makes a difference" to engineering firms, that when his firm verifies degrees its policy is to ask the university only whether or not the candidate has a degree and not how close the person is to obtaining the degree, and that executive search firms routinely drop candidates when it is discovered that false statements have been made because the search firms can be liable for a client company's losses due to a candidate's falsified credentials.[36] Mr. Shattuck states in his affidavit that it is "inappropriate for any student to claim to have a degree from [a] university until the criteria the university established have been met," since universities have the right to establish their own criteria for granting degrees, and Michigan's requirement that it be paid before awarding a degree is no less valid that any academic requirement.[37] Mr. Shattuck concludes that, although Plaintiff could have truthfully stated that he met all the course requirements for a B.S.M.E. from the University of Michigan, he made a false statement when he said that he had the degree.[38]

Plaintiff in response has proffered expert affidavits from James Graham Williamson, Registrar of Rice University, and Richard J.L. Glor, Registrar and Foreign Student Advisor of the University of St. Thomas. Mr. Williamson states that American universities consider that a degree "has essentially been earned at the time the student completes all requirements for the degree," and that the conferral of the degree, posting of the degree, and issuance of the diploma are "little more than formalities."[39] Mr. Williamson's opinion is that a "student who has completed all requirements, but for some reason has not had the degree conferred or noted on his or her transcript, or has not received a diploma, does not seriously misspeak if he/she claims the degree, especially if the university later validates the claim."[40] He explains that, since the University of Michigan conferred the degree retroactively to April 29, 1978, Plaintiff necessarily completed all academic requirements in 1978, and that Plaintiff "could therefore truthfully say in 1990 that he earned the degree from the University of Michigan in 1978." Finally, Mr. Williamson states as follows:

"If any fault is to be found, it lies with the university. It should have conferred the degree in 1978 (withholding any acknowledgment to third parties until Mr. Weeks' loans were cleared). At the very least, the university was remiss in not posting the degree when the debts were cleared, apparently a good while ago, long prior to Mr. Weeks' application for employment with [PEI]."[41]

Mr. Glor's affidavit also states that, in his expert opinion, Plaintiff did not make a false statement. Mr. Glor states as follows:

Since he had completed all of his degree requirements and the posting policy in 1978 was to wait until the indebtedness was satisfied, the University was in error for not maintaining an audit of their graduates who still owed money to the university, consequently updating such graduates' transcripts after their indebtedness had been paid in full. The fact that Mr. Weeks did not check after paying off his indebtedness to make sure that his records had been updated in no way negates the fact

---

**36.** Affidavit of W.L. Pate, Jr. (Exhibit F to Summary Judgment Motion).

**37.** Affidavit of David Shattuck (Exhibit I to Summary Judgment Motion).

**38.** *Id.*

**39.** Affidavit of James Graham Williamson (Exhibit B to Summary Judgment Response).

**40.** *Id.*

**41.** *Id.*

that he indeed received a B.S.E. in Mechanical Engineering from the University of Michigan in 1978.[42]

The experts' conflicting opinions demonstrate that there is a fact issue as to Plaintiff's qualifications, and therefore as to whether he is able to establish his prima facie case of discriminatory discharge. Therefore, summary judgment on this ground is inappropriate.

Defendants have also argued that summary judgment in their favor is warranted because Plaintiff cannot establish that the nondiscriminatory reason proffered for Plaintiff's termination was a pretext for racial discrimination. The nondiscriminatory rationale proffered by Defendants is that Plaintiff falsified his employment application and resume.[43]

Plaintiff's Response argues that PEI's proffered reason for the termination was a pretext for racial discrimination. Defendants have proffered the Eckols affidavit to demonstrate that on two previous occasions, white male engineers who misrepresented their academic credentials to PEI were terminated because of those falsifications.[44] However, Plaintiff provides evidence that the two white employees who were terminated for falsifying employment applications were given up to two weeks to confirm their degrees, whereas Plaintiff was given only four days and, moreover, was terminated before the four-day period had expired.[45] Plaintiff also alleges that Spinks acknowledged that he knew, prior to April 2, 1993, that the University of Michigan had confirmed their view that Plaintiff had a B.S.M.E. prior to submitting his application to PEI, but that PEI nevertheless refused to change its decision to fire Plaintiff.[46]

In addition, Plaintiff has argued that pretext is established because he, PEI's only black technical supervisor, was "subject to a pattern and practice of intentional and purposeful discriminatory treatment by PEI because of his race, black."[47] Plaintiff states that he always performed his job in a professional manner, but that he nevertheless was subjected to discriminatory treatment, as detailed in the accompanying footnote.[48] This evidence collectively is sufficient to establish a genuine question of fact on the issue of pretext and Defendant's intent as to the March 31, 1993 decision to terminate Plaintiff. Thus summary judgment is inappropriate.

### 4. *After–Acquired Evidence*

■ Defendants have argued that, even if Plaintiff could recover for discriminatory discharge, his damages and relief[49] would be

---

42. Affidavit of Richard J.L. Glor (Exhibit C to Summary Judgment Response).

43. Summary Judgment Motion, at 9; Eckols Affidavit.

44. Summary Judgment Motion, at 6; Eckols Affidavit.

45. Summary Judgment Response, at 6; Weeks Affidavit, at 1–2; Petrocon's Interoffice Communication, regarding "Meeting with Jack Holland" (Exhibit F to Summary Judgment Response).

46. Summary Judgment Response, at 6; Weeks Affidavit, at 1.

47. Weeks Affidavit, at 2.

48. Plaintiff in his affidavit avers that: Plaintiff's recommended and approved raise and promotion was never put into effect, allegedly because Spinks did not process the paperwork in order to prevent Plaintiff from earning a salary comparable to his own; Plaintiff was not permitted to negotiate his own per diem with clients as other project managers were; Plaintiff was promised but not given a larger office, while white employees were given this benefit; Defendant Coury assigned a deputy project manager to Plaintiff's project, even though no other project managers had assistants assigned to them; Plaintiff was prevented from meeting with a client on a project audit, against the client's wishes; Plaintiff was prevented from being interviewed by the PEI corporate office about his project, contrary to PEI procedure; Plaintiff was intentionally omitted as a speaker at a kick-off meeting where all other project engineers were listed as speakers; Defendant Spinks refused to cooperate with Plaintiff on his project and Defendant Coury, despite complaints and promises to remedy the situation, did nothing; and Plaintiff was asked to sign and authorize an invalid employee time sheet and, when he refused, the improper time sheet was completed behind his back so as to allocate the time to Plaintiff's project. Weeks Affidavit, at 2–3.

49. Plaintiff's Original Complaint (Exhibit J to Summary Judgment Motion) seeks injunctive relief, reinstatement, compensatory damages, back pay and other lost benefits, and punitive damages.

limited because, after terminating Plaintiff on March 29, 1993, Defendants learned on April 1, 1993 of additional misrepresentations on Plaintiff's employment application. This after-acquired evidence consists of misrepresentations concerning Plaintiff's physics degree and the number of years he had attended the University of Michigan.[50] Defendants argue that these additional misrepresentations were legal justification for his termination.

Plaintiff has conceded that he made "intentional misrepresentations" in his employment application concerning his physics degree and the length of time he had attended the University of Michigan.[51] However he argues that, since his position did not require a physics degree, the misrepresentations were neither relied upon in his firing nor material to his position with PEI. He urges that there thus is a question of fact for the jury concerning whether or not the misrepresentation was sufficiently grave to warrant discharge.[52]

When there is after-acquired evidence that would justify a plaintiff's termination, front pay and reinstatement are not appropriate remedies, although back pay may be awarded from the date of the unlawful discharge to the date the new information was discovered. *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, —— ——, 115 S.Ct. 879, 886–87, 130 L.Ed.2d 852 (1995). In order to affect the remedy, the employer must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge. *Id.* at ——, 115 S.Ct. at 886; *Shattuck v. Kinetic Concepts, Inc.,* 49 F.3d 1106, 1108 (5th Cir.1995). The Fifth Circuit has required that the employer seeking to rely upon after-acquired

evidence must establish that the plaintiff would have been discharged upon discovery of the after-acquired information in order to justify limitation of the plaintiff's relief. *Shattuck,* 49 F.3d at 1109.[53]

Defendants have proffered evidence that they would indeed have terminated Plaintiff had they known of his misrepresentation concerning the physics degree. Douglas Eckols, Senior Vice President of PEI, provided an affidavit stating that Plaintiff would have been discharged based solely on the misrepresentations concerning his physics degree and the length of time he had spent at the University of Michigan. Eckols further explained that falsification of employment records is not tolerated at PEI because the firm often submits its employees' resumes or job applications to clients in connection with bidding or performing the jobs on which the firm is retained, and thus inaccuracies in an application or resume place PEI in the position of misrepresenting the qualifications of its engineers or employees to its clients.[54]

Furthermore, directly above the line containing Plaintiff's signature on the PEI employment application filled out by Plaintiff appears the following language:

> I certify that the facts contained in this application are *true and complete* to the best of my knowledge and understand that, if employed, *falsified statements on this application shall be grounds for dismissal.* I authorize investigation of all statements contained herein and the references listed above to give you any and all information concerning my previous employment and any pertinent information they may have, personal or otherwise. . . . [55]

Plaintiff has not demonstrated that a genuine issue of material fact exists on this issue. Contrary to Plaintiff's implication, it is not

**50.** Summary Judgment Motion, at 6, 10.

**51.** Plaintiff's Response to Defendants' Memorandum Brief, at 8; Plaintiff's Deposition, at 42–43.

**52.** Summary Judgment Response, at 12.

**53.** Plaintiff cites *Johnson v. Honeywell Information Systems, Inc.,* 955 F.2d 409, 414 (6th Cir. 1992). Since *Johnson* was decided before the

Supreme Court's *McKennon* decision and evaluated after-acquired evidence as a defense to liability, its authority has now been called into serious doubt, and the Court declines to rely on it.

**54.** Eckols Affidavit, at 2.

**55.** Plaintiff's Application for Employment (Exhibit A to Summary Judgment Motion) (emphasis added).

Defendants' burden to demonstrate that they have previously discharged an employee for an "immaterial misrepresentation" on an employment application.[56] Furthermore, Plaintiff's statement that the physics degree and length of time he spent at the University of Michigan was "immaterial" to his position with PEI is merely his personal subjective opinion. Given the explanation offered by Defendants of the need for accurate information about the credentials of their employees, and particularly their engineers, this conclusory statement is not factual evidence sufficient to defeat a motion for summary judgment. *See Little*, 37 F.3d at 1075 (conclusory allegations and unsubstantiated assertions are insufficient to demonstrate genuine issue of material fact). Moreover, significantly, Plaintiff has proffered no evidence of similar misrepresentations by PEI employees which did not result in termination.

The Court finds that Plaintiff has not raised a genuine issue of material fact as to whether or not Defendants would have discharged Plaintiff based on the evidence acquired on April 1, 1993. Therefore, while this after-acquired evidence does not bar Defendants' liability, it does limit the damages Plaintiff may recover. Front pay and reinstatement are not available to Plaintiff and, should Plaintiff ultimately prevail on his claim, back pay is available only up to April 1, 1993.

Finally, Plaintiff has asserted that he had notified Defendants in 1991 on a form entitled "Benefit Dates/Education Levels" that his physics degree was from the University of Liberia.[57] Plaintiff argues, without citation to any legal authority, that Defendants are prevented by laches from asserting that they would have terminated Plaintiff for these false statements on his employment application, especially when neither was listed as a response on his actual termination in March, 1993.[58] The Court is unpersuaded. Laches is an equitable remedy. Plaintiff does not qualify for its graces, even if adequate time had passed for the doctrine to be invoked as a matter of law. Defendants have submitted evidence that submission of the benefits form was a routine procedure that would not be brought to the attention of those who hired Plaintiff or who circulated his application to potential customers of PEI during the bidding for new business. The Court finds this "back door" effort by Plaintiff to inform his employer of the truth concerning his credentials insufficient to bind or constitute notice to PEI. This Court will not condone such a disingenuous and half-hearted attempt by Plaintiff to correct his falsehoods.

**B. *Section 1981***

Defendants have moved for summary judgment on Plaintiff's Section 1981 claim. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ...". 42 U.S.C. § 1981(a).

Plaintiff asserts that he has two claims pursuant to Section 1981: First, Plaintiff makes a claim regarding racially motivated interference with his "at will employment contract" with PEI. Second, Plaintiff makes a claim regarding Defendants' racially motivated interference with his contract with PEI to go to Saudi Arabia for one year.[59]

**1. *Exhaustion of Administrative Remedies.*** Plaintiff's first Section 1981 claim, which is similar to his Title VII claim, is regarding racially motivated interference with his "at will employment contract" with PEI. Since the Section 1981 does not have the same procedural requirements as a Title VII claim, Plaintiff contends that Defendants are liable for conduct up to two years prior to the date Plaintiff filed his lawsuit and that he states a claim against each of the individual

---

56. *See* Plaintiff's Memorandum of Law on Intentional Infliction of Emotional Distress, and After-Acquired Evidence [Doc. # 37], at 6–7.

57. "Benefit Dates/Education Levels" Form (Exhibit A–2 to Summary Judgment Response).

58. Summary Judgment Response, at 11.

59. Plaintiff's Response to Defendants' Memorandum Brief, at 4.

Defendants. In a memorandum brief to the Court discussing the relationship between Title VII and Section 1981, Defendants appear to request the Court to dismiss Plaintiff's Section 1981 claim because Plaintiff has allegedly failed to comply with Title VII's administrative procedures.[60]

The term "at will employment contract" is anomalous since at-will employment, by definition, is employment at the will of the employer and employee; such a relationship denotes the absence of (or is the opposite of) a contract for employment.[61] The Court nevertheless addresses the arguments of the parties on the issue of administrative exhaustion.

Defendants' arguments that Plaintiff's Section 1981 claim should not survive because of alleged failure to comply with Title VII administrative procedures must fail. Defendants have conceded that Fifth Circuit authority states that Title VII's administrative prerequisites are not prerequisites for a Section 1981 action.[62] Nevertheless, Defendants argue that the case law supporting Plaintiff's argument was issued before passage of the 1991 Civil Rights Act and that it is "based on the express or implied assumption that because Section 1981 and Title VII are so different in terms of the types of claims to which they apply ... it would not make sense to apply Title VII's administrative procedures to a cause of action under Section

1981." [63] Defendants argue that the 1991 Civil Rights Act made Section 1981 virtually identical in substance to Title VII, and therefore that "it only makes sense that the procedural requirements under Title VII should be applied to causes of action brought under Section 1981." [64] Defendants have cited no authority whatsoever in support of this proposition.[65]

This Court will not create or impose on any plaintiffs complex administrative exhaustion requirements without explicit legislative authorization. *Cf. Matter of Greenway*, 71 F.3d 1177, 1180 (5th Cir.1996). Defendants may advocate their position to Congress or conceivably to an appellate court. However, this Court declines to grant summary judgment or dismissal on this ground.

■ *2. Contract for work in Saudi Arabia.* Plaintiff also claims that Defendants violated Section 1981 when they interfered, because of Plaintiff's race, with his contract to go to Saudi Arabia for a year on behalf of PEI.[66] Plaintiff states that Coury had offered Plaintiff the one year position in Saudi Arabia, that the contract was renewable for a second year and involved a substantial pay raise, and that Plaintiff had accepted the offer.[67] Defendants have argued, based on Plaintiff's deposition, that there was an oral agreement for his employment in Saudi

---

**60.** Memorandum Brief to the Court Regarding Interference with a Contract Cause of Action, the Relationship Between Substantive and Procedural Requirements of Title VII and § 1981, and the Nature of the Issue of Plaintiff's "Justification" for Misrepresenting His Academic Credentials [Doc. # 36] (hereinafter "Defendants' Memorandum Brief"), at 9.

**61.** Black's Law Dictionary, at 525 (6th ed. 1990) (at will employment relationship is one without specific duration, and which either employer or employee may terminate at any time, for or without cause). The parties have not addressed the anomaly perceived by the Court. Since the Court does not understand Plaintiff's claim, the Court declines on this record to reach a legal conclusion as to its viability.

**62.** Defendants' Memorandum Brief, at 6 (citing *Alpha Portland Cement Co. v. Reese*, 507 F.2d 607 (5th Cir.1975)).

**63.** *Id.* at 7.

**64.** *Id.* at 8.

**65.** The only authority cited by Defendants is *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), a case that involved § 1985 rather than § 1981.

**66.** Defendants' Memorandum Brief discusses at some length Texas law regarding tortious interference with a contractual relationship. However, Plaintiff has clarified in response that his claim regarding interference with a contract is based on 42 U.S.C. § 1981, and not on Texas law. Plaintiff's Response to Defendants' Memorandum Brief, at 4–6. Therefore, the state law regarding interference with a contractual relationship will not be addressed.

**67.** Summary Judgment Response, at 9. There is nothing in the record as to how Plaintiff indicated his acceptance to Defendant PEI.

Arabia for a period of two years,[68] and therefore that the contract is barred by the statute of limitations. Plaintiff maintains that the one year term of the contract is evident from the text of the written contract document forwarded to him, and that the contract was to have been renewable for a second year. Plaintiff also has argued that this contract did not violate the statute of frauds because the available writings suffice as a valid written contract or, in the alternative, the parties had an oral contact performable within one year, since there was a ninety day probationary period.[69]

Texas' statute of frauds applies to an "agreement which is not to be performed within one year from the date of making the agreement." Tex.Bus. & Com.Code Ann. § 26.01(b)(6). The Court finds that there are fact questions precluding summary judgment. The written document is ambiguous and unsigned, the circumstances of the offer and Plaintiff's acceptance are not clear, and the Court cannot determine whether or not there was an agreement between Plaintiff and PEI that was performable "within" (as opposed to "for at least") one year. Therefore, the Court declines to grant summary judgment in favor of Defendants on this ground.[70]

■ However, as to Plaintiff's claims under Section 1981, the Court holds that the after-acquired evidence doctrine applies, just as the rule governs Plaintiff's Title VII claim. *See Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1284 n. 7 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1099, 130 L.Ed.2d 1066 (1995); *McCray v. DPC Industries, Inc.*, 875 F.Supp. 384 (E.D.Tex.

1995); *Swicker v. William Armstrong & Sons, Inc.*, 484 F.Supp. 762, 770 (E.D.Pa. 1980). Therefore Plaintiff, even if successful on his Section 1981 claims, may not be awarded front pay and reinstatement, and no back pay is available after April 1, 1993. *See McKennon*, 513 U.S. at —, 115 S.Ct. at 886.

## C. *Sections 1985 and 1986*

■ Defendants argue that dismissal of Plaintiff's conspiracy claims for damages under Sections 1985 and 1986 is appropriate because Plaintiff has failed to state a claim for relief under these provisions. Specifically, Defendants argue that 42 U.S.C. § 1985(3) creates no substantive rights, but only remedies, and that a person claiming an injury pursuant to an alleged violation of Title VII does not have a cause of action pursuant to Section 1985(3).[71] Defendants further argue that Section 1986 claims are derivative of Section 1985 claims, and therefore that dismissal of the Section 1985 claim requires dismissal of the Section 1986 claim as well.

This analysis fails since Plaintiff's claims under Sections 1985 and 1986 are based upon his Section 1981 claim, and not merely his Title VII claim.[72] The courts have recognized that Section 1985(3) claims may be supported by rights created under Section 1981. *See, e.g., Vakharia v. Swedish Covenant Hospital*, 824 F.Supp. 769 (N.D.Ill. 1993); *Alder v. Columbia Historical Society*, 690 F.Supp. 9 (D.D.C.1988); *cf. Ladson v. Ulltra East Parking Corp.*, 853 F.Supp. 699, 704 n. 6 (S.D.N.Y.1994).[73] Therefore, dismissal of these claims is not warranted at

---

**68.** Plaintiff's Deposition (Exhibit H to Summary Judgment Motion), at 161–62.

**69.** Plaintiff's Response to Defendants' Memorandum Brief, at 4–5.

**70.** The Court does not intend to imply that Plaintiff states a claim as a matter of law, but rather the fact questions preclude a final legal determination.

**71.** Memorandum Brief in Support of Defendants' Motion to Dismiss [Doc. # 23], at 10–11 (citing *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366, 379, 99 S.Ct. 2345, 2352–53, 60 L.Ed.2d 957 (1979)).

**72.** Response to Motion to Dismiss, at 5; *cf. Novotny*, 442 U.S. 366, 99 S.Ct. 2345 (Section 1985 claim based upon Title VII claim).

**73.** The *Ladson* case holds that the plaintiff's Section 1981 claim, which asserted a rights violation covered by or closely related to his Title VII claim, could not provide the basis for a Section 1985 claim. In the case at bar, however, Plaintiff's Saudi Arabian contract claim is brought pursuant to Section 1981 and not Title VII, on a ground independent of his Title VII theories of denial of promotion and raise and unlawful termination.

this stage, given that summary judgment on Plaintiff's Section 1981 claim has been denied.[74]

## D. *Intentional Infliction of Emotional Distress*

Plaintiff argues that Defendants have intentionally inflicted emotional distress upon him by the following actions:

- terminating him in a manner different from the manner of terminating white employees, who were given more time to prove their degrees and were terminated for much more serious infractions;

- failure to timely promote him;

- denial of perks and privileges given to others with similar responsibilities, such as a larger office or authority to negotiate his own per diem;

- verbal assault, such as Spinks telling Plaintiff he would not approve a raise because it would bring him too close to what Spinks, a white male, earned;

- excluding Plaintiff from participating in audits, both internal and by the client;

- excluding Plaintiff, the only black supervisory engineer, from giving a speech at his project's kick-off meeting, when no other project engineers were so excluded.[75]

In order to recover damages for intentional infliction of emotional distress, Plaintiff must prove the following:

(1) Defendants acted intentionally or recklessly;

(2) Defendants' conduct was extreme and outrageous;

(3) Defendants' actions caused Plaintiff emotional distress; and,

(4) the resulting emotional distress was severe.

*MacArthur v. University of Texas Health Center,* 45 F.3d 890, 898 (5th Cir.1995); *Danawala v. Houston Lighting & Power Co.,* 14 F.3d 251, 256 (5th Cir.1993); *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). Liability for outrageous conduct "should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Twyman,* 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 (1965)); *accord, MacArthur,* 45 F.3d at 898.

Plaintiff has presented no evidence to support a finding that Defendants' conduct was extreme or outrageous. Taking all of his allegations as true, they do not rise to the level of conduct "utterly intolerable in a civilized community."[76] Indeed, to the contrary, most of his complaints fall "within the realm of an ordinary employment dispute," for

**74.** The Court does not reach the question of whether Plaintiff states a legally cognizable claim under Section 1985. There are issues as to whether a company can conspire with its own officers or employees who clearly were acting only as agents for that company. In addition, for reasons noted above and others, the Court perceives Plaintiff's Section 1981 claim to be highly questionable.

Furthermore, the ruling regarding application of the after-acquired evidence doctrine to Plaintiff's Title VII and Section 1981 claims may also apply to Plaintiff's claims under Sections 1985 and 1986. The Court does not resolve this issue.

**75.** Plaintiff's Memorandum of Law on Intentional Infliction of Emotional Distress and After Acquired Evidence [Doc. # 37], at 4–5.

**76.** *See Burden v. General Dynamics Corp.,* 60 F.3d 213 (5th Cir.1995) (summary judgment for employer on claim of intentional infliction of

emotional distress affirmed, rejecting Plaintiff's allegations that, despite his excellent job performance, he suffered humiliation and health problems when he was reclassified to an isolated position, he was given no input into critical management decisions, he was ostracized and given menial assignments, and his office and secretary were taken away); *Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31 (5th Cir.1992) (summary judgment for employer on claim of intentional infliction of emotional distress affirmed, despite allegations that Plaintiff was told that he did not "fit in" with the company, and that his supervisor was extremely hostile, constantly criticized him, threatened him with termination, reassigned his sales territory and removed a sale from his credits).

The Court finds that the allegations in *Guzman v. El Paso Natural Gas Co.,* 756 F.Supp. 994, 1002–03 (W.D.Tex.1990), on which Plaintiff heavily relies, were materially more extreme than the conduct alleged in the case at bar.

which the claim of intentional infliction of emotional distress does not lie. *See Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33–34 (5th Cir.1992).[77] Therefore, Defendants' motion for summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted.[78]

## E. *Thirteenth Amendment*

Defendants have moved to dismiss Plaintiff's claims under the Thirteenth Amendment. Plaintiff has stated that he agrees to the dismissal of this claim.[79] Therefore, this claim is dismissed.

## IV. CONCLUSION

In summary, it is now ordered as follows:

- Defendants' Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**; specifically:
 - the motion to dismiss Plaintiff's Title VII claims against the individual Defendants, which is converted to a motion for summary judgment, is granted;
 - the motion to dismiss Plaintiff's Title VII claims of discriminatory failure to grant promotion and pay raise, which is converted to a motion for summary judgment, is granted;
 - the motion to dismiss claims under 42 U.S.C. §§ 1985 and 1986 is denied at this time; and,
 - the motion to dismiss claims under the Thirteenth Amendment is unopposed and therefore is granted.

- Defendants' Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**; specifically:
 - summary judgment on Plaintiff's Title VII claim of discriminatory discharge is denied;
 - summary judgment on the application of the after-acquired evidence doctrine is granted;
 - summary judgment on Plaintiff's claim under 42 U.S.C. § 1981 is denied; and,
 - summary judgment on Plaintiff's claim of intentional infliction of emotional distress is granted.

---

77. Plaintiff has alleged that Spinks stated that he would not approve Plaintiff's raise because he, a white male, did not want Plaintiff to earn a higher salary than he. Although this statement arguably lies outside the realm of an ordinary employment dispute, it is not sufficiently outrageous to support Plaintiff's claim. *Cf. Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (calling employee "Mexican" or "wetback" does not support claim for intentional infliction of emotional distress).

78. The Court's conclusion is not affected by Plaintiff's argument that Defendants filed the motion for summary judgment on this claim after the motion deadline and that Plaintiff was, at least in November, in China and unavailable to respond to the motion by affidavit. *See* Plaintiff's Response to Defendants' Supplemental Motion for Summary Judgment [Doc. # 39], at 1–2. Since this Court invited Defendants' motion at the pre-trial conference in October, there is no timeliness problem. Furthermore, the decision to grant summary judgment on this issue is in no way based upon Plaintiff's failure to provide a sworn statement. Instead, based upon the record as a whole, and in particular the detailed facts and briefing presented by Plaintiff on the issue of intentional infliction of emotional distress, the Court finds that there is no genuine issue of material fact on this claim.

79. Plaintiff's Response to Defendants' Motion to Dismiss [Doc. # 26], at 5.